TATEL, Circuit Judge,
concurring in part and concurring in the judgment:
I agree that the Morgan Act violates Article I, Section 9 of the Constitution. I write separately because I do not share the court’s view about why the Act fails the functional test for punitiveness.
Key to the court’s analysis is its belief that the Act furthers “no attendant non-punitive purposes.” Maj. Op. at 1224. Protecting Hilary from future abuse, the court concludes, is a punitive objective because Congress would have thought that Hilary needed protection only if it believed that Dr. Foretich had actually abused her. See id. at 1223 (“The only plausible answer ... is that Congress believed Dr. Foretich had abused his daughter.... The purposes the Government alleges thus cannot be viewed as nonpunitive.”). But Congress could have believed the accusations and yet passed the Act not to punish Dr. Foretich, but to protect Hilary from future abuse. Under those circumstances, the Act would not amount to an attainder because “[t]he question in each case where unpleasant consequences are [imposed] *1227 upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation.... ” Flemming v. Nestor, 363 U.S. 603, 614, 80 S.Ct. 1367, 1374-75, 4 L.Ed.2d 1435 (1960) (quoting De Veau v. Braisted, 363 U.S. 144, 160, 80 S.Ct. 1146, 1154-55, 4 L.Ed.2d 1109 (1960) (plurality opinion)) (internal quotation marks omitted); see also Dehainaut v. Pena, 32 F.3d 1066, 1071 (7th Cir.1994) (“Even where a fixed identifiable group ... is singled out and a burden traditionally associated with punishment ... is imposed, the enactment may pass scrutiny under bill of attainder analysis if it seeks to achieve legitimate and non-punitive ends and was not clearly the product of punitive intent.”). Thus, Congress could have imposed burdens on Dr. Foretich without violating the Bill of Attainder Clause so long as it did so while pursuing a legitimate objective and not in order to punish him.
Of course, if the legislative record contained little or no evidence to support the accusations of abuse, then Congress’s acceptance of them and its consequent decision to burden Dr. Foretich would raise suspicions of punitiveness. But that is not the case here. Relying on testimony from numerous experts and other witnesses, the D.C. Superior Court judge who presided for years over the Morgan-Foretich custody dispute found the evidence of abuse “in equipoise,” Morgan v. Foretich, No. D-684-83, slip op. at 3 (D.C.Super. Ct. Aug. 18, 1987), reprinted in J.A. 306, i.e., that the chances that Hilary had been abused were fifty-fifty. Congress could thus have reasonably believed that Hilary required protection, and nothing barred it from concluding that she needed more protection than the D.C. court had provided. See BellSouth Corp. v. FCC, 162 F.3d 678, 689 (D.C.Cir.1998) (“Congress may read the evidence before it in a different way than might this court or any other.... ”). For this reason, I think we have no basis for declaring the goal of protecting Hilary to be a “smoke screen” behind which Congress is hiding punitive motives. See id. (finding the functional test unsatisfied because “it [could not] be legitimately suggested that the risks of anticompetitive conduct were so feeble that no one could reasonably assert them except as a smoke screen for some invidious purpose” (internal quotation marks omitted)).
The court articulates a second reason for concluding that Congress acted punitively: if Congress thought D.C. law inadequate to protect Hilary, then it would have extended the Morgan Act to all D.C. child-custody cases. See Maj. Op. at 1224 (“In light of the Act’s narrow applicability, the Government’s asserted purposes are simply implausible.”). Congress may have decided against legislating more broadly, however, ' because the Morgan-Foretich case was the only one it knew about in which a court did not act to prevent future abuse of a child even though the child believed she had been abused and even though the court had found evidence of abuse. Recognizing the unique nature of each case, Congress may have been unprepared to place on other parents the onus it imposed on Dr. Foretich without knowing more about their particular situations. The Supreme Court accepted a similar explanation in Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). There, President Nixon charged that Congress had punitively targeted him by requiring that he turn his presidential papers over to the General Services Administration. The law did not, Nixon pointed out, address the papers of other presidents — either past or future^ — nor did it address other officials’ *1228 papers. Holding that this did not make the law punitive, the Court explained:
Congress’ action to preserve only appellant’s records is easily explained by the fact that at the time of the Act’s passage, only his materials demanded immediate attention.... Congress had reason for concern solely with the preservation of appellant’s materials, for he alone had entered into a depository agreement ... which by its terms called for the destruction of certain of the materials.
Id. at 472, 97 S.Ct. at 2805. Given that here too “the focus of the enactment can be fairly and rationally understood,” id., I cannot agree that Congress’s decision to target Dr. Foretich makes the Morgan Act a bill of attainder. As long as Congress does not act to punish, it may legislate narrowly because its decision to resolve a case by legislatively determining guilt does not violate the Bill of Attainder Clause— punishment violates that clause. See Selective Serv. Sys. v. Minn. Pub. Interest Group, 468 U.S. 841, 846, 104 S.Ct. 3348, 3351-52, 82 L.Ed.2d 632 (1984) (“A bill of attainder [is] ... a law that legislatively determines guilt and inflicts punishment upon an identifiable individual....” (internal quotation marks omitted) (emphasis added)).
To me, what makes the Morgan Act a bill of attainder is that the only legitimate, non-punitive objective the Act might plausibly have furthered — protecting Hilary from abuse — could have been achieved in a less-burdensome way, i.e., by prohibiting the D.C. court from granting Dr. Foretich unsupervised visitation. See Nixon, 433 U.S. at 482, 97 S.Ct. at 2810 (“In determining whether a legislature sought to inflict punishment on an individual, it is often useful to inquire into the existence of less burdensome alternatives by which that legislature ... could have achieved its legitimate nonpunitive objectives.”). Barring unsupervised visits would have guaranteed Hilary’s safety without imposing on Dr. Foretich the extreme burden of effectively terminating his parental rights. That Congress eschewed this less-burdensome alternative and imposed an additional hardship that had no legitimate non-punitive purpose demonstrates the Act’s puni-tiveness, rendering it a bill of attainder. “[Deprivations and disabilities [that are] so disproportionately severe and so inappropriate to nonpunitive ends ... unquestionably ... fall within the proscription of Art. I, § 9.” Id. at 473, 97 S.Ct. at 2805.
This approach tracks the Second Circuit’s in Consolidated Edison Co. v. Pataki, 292 F.3d 338 (2d Cir.2002). There, the court found that the New York State legislature had a valid, non-punitive reason for requiring Con Ed, the sole target of the challenged law, to absorb the costs of a power outage that was at least partly its fault: if Con Ed did not absorb the costs, ratepayers would have to. “The legislature could legitimately conclude,” the Second Circuit held, “that, as between Con Ed, the party that caused the outage, and the ratepayers, parties having nothing whatsoever to do with the outage, Con Ed should bear the costs attributable to its negligence.” Id. at 352. The court had a very different view about the legislature’s decision to bar Con Ed from recovering the outage costs that it would have incurred even had it not acted negligently. Because that “pilfing] on,” id. at 354, served no non-punitive purpose, the court concluded the statute was a bill of attainder. Here, too, even though Congress had a valid non-punitive reason for passing the Morgan Act, it impermissibly “piled on” an additional, entirely unnecessary burden. This punitiveness, combined with the Act’s undisputed specificity, renders the Act a bill of attainder.
*1229 Perhaps seeking to avoid the consequences of this analysis, the government insists that Congress passed the Morgan Act in order to accomplish a different purpose — one for which no less-burdensome alternative existed. According to the government, Congress wanted to give priority to “a 14-year-old child’s interest in being able to determine whether and to what extent she had to visit a non-custodial parent. ...” Appellees’ Br. at 50. Congress did this, the government asserts, in order to spare Hilary from trauma she might suffer were she forced to see a biological parent she believed had abused her. To satisfy the functional test, however, a goal must itself be legitimate. See Nixon, 433 U.S. at 476, 97 S.Ct. at 2807 (“Where ... legitimate legislative purposes do not appear, it is reasonable to conclude that punishment of individuals disadvantaged by the enactment was the purpose of the deci-sionmakers.” (emphasis added)). The government’s proffered goal fails this test. Because depriving Dr. Foretich of the ability to see his daughter without her consent infringed his right to control his child’s upbringing, and because that right is fundamental, see, e.g., Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 2059-60, 147 L.Ed.2d 49 (2000) (plurality opinion), any infringement had to advance a compelling-interest and be narrowly tailored, see, e.g., Reno v. Flores, 507 U.S. 292, 301-02, 113 S.Ct. 1439, 1446-47, 123 L.Ed.2d 1 (1993). Contending that the Act did further a compelling interest, the government cites cases that involve the protection of minors from physical harm. But those cases do not help the government, for Congress could have protected Hilary from physical harm simply by barring unsupervised visitation. Because giving Hilary the absolute right to terminate her father’s parental rights represents an illegitimate goal, under the functional test it cannot save the Morgan Act.